The first case this afternoon is People of the State of Illinois v. Emeka. Am I pronouncing that correctly? Case number is 4130929. And for the appellant, we have Sarah Curry and for the appellant, Leigh Perry Miller. Please proceed. Good afternoon. Sarah Curry from the State Appellate Defender. I represent Chiquada Emeka. Camilla Angles was the state's key witness against Chiquada Emeka. However, Camilla did not testify at his trial. Yet through the testimony of Sgt. Patrick Frazier and Inspector Tom Pickett, the jury heard all about the statement Camilla provided to police. This testimony was hearsay as it was offered for the truth of the matter asserted. Moreover, because Chiquada was not given the opportunity to cross-examine Camilla regarding her statements to police, the admission of this evidence violated his rights under the Confrontation Clause. The Illinois Supreme Court has held that where the substance of the conversation with the declarant goes to the essence of the disputed trial, it would inevitably go to prove the matter asserted were a witness permitted to recount it. Here, the disputed trial was whether Chiquada possessed the pseudoephedrine with the intent that it be used in the manufacture of methamphetamine. The conversation police had with Camilla bore directly on the disputed issue and was the only direct evidence suggesting that Chiquada possessed the necessary intent. So we should disregard the camera and the video showing him with this stuff? All of that evidence goes to his possession, not the necessary intent that's required under the statute. But doesn't it go to the intent when you consider he basically is videotaped paying $50 for a box of pseudoephedrine? There was no evidence permitted that the $50 was for the pseudoephedrine. What was it for? He could have been repaying a debt. Well, that would be a reasonable inference, though, wouldn't it? Based upon the expert testimony that the State had presented? The text messages suggested nothing about a purchase, about an exchange of money for the pseudoephedrine. There were two boxes of pseudoephedrine. No, but there was expert testimony put on by the State that there was a black market and that the going price for a $7 box was $50. Correct. Okay, and then the defendant takes a box from the vehicle and leaves $50. My question is, isn't there an inference that the $50 was payment for the antihistamine that was taken? It certainly could be considered circumstantial evidence by the jury. However, the intent element needs to be proven beyond a reasonable doubt, and the only evidence connecting Chiquato to any reference to methamphetamine came through Camilla's statement. Without her statement, you have no connection whatsoever between Chiquato and methamphetamine. There was no discussion about a payment for that pseudoephedrine. There was no discussion about what that pseudoephedrine would be used for. There was no evidence that Chiquato had ever had anything to do with methamphetamine before. And without Camilla's statement plugging in all these holes that the circumstantial evidence left open, the jury certainly could have not been able to find beyond a reasonable doubt that the intent was proven. Through the testimony of Camilla, the police questioned her specifically about what kind of information she might have regarding other drug offenses and people she knew, because they were always trying to find the next person up, the next person up in the methamphetamine chain. The questions asked by police were testified to specifically, and the police testified that in response to her answers, they targeted him as somebody that would be interested in purchasing pseudoephedrine with the intent that it be used in the manufacture of methamphetamine. Without this evidence connecting the dots from the pseudoephedrine found in his car to the intent, the jury would not have been able to find the necessary intent. This is not a situation of a course of investigation, because the substance of the conversation between the police and Camilla was testified to. The police testified to things outside of their knowledge. The course of investigation rule goes to things that police are allowed to testify that is within their specific knowledge. Here, prior to speaking to Camilla, they didn't know Chiquato. They didn't have any reason to suspect that he would be interested in purchasing pseudoephedrine. As such, their testimony went beyond what is allowed under the course of investigation rule. They testified to the substance of this conversation. They answered serial questions, which is another factor that takes it outside of the course of investigation. It wasn't one simple question. It was pages and pages of testimony. Without Camilla's information, the state would not have been able to prove the necessary intent. Chiquato, moreover, he was extremely prejudiced by the admission of this hearsay evidence, because the disputed issue at trial, as I said, was the proof of this intent element, and this hearsay evidence bore directly on that element. Moreover, Chiquato was not able to cross-examine her. She gave this information to police after being arrested for the possession of methamphetamine on her own. She was in trouble. They were asking her to give somebody up. These are things that would have been very important for Chiquato to be able to cross-examine her on, and he did not have the ability to do that. The jury was never told that this evidence was not being offered as substantive evidence, and as such, they were free to use this evidence to find the necessary intent element was met. Chiquato acknowledges that his attorney did not object to this evidence, nor was it included in the post-trial motion, of which there was none, which goes to a claim of ineffective assistance of counsel. Moreover, under the plain error rule, the evidence of intent was closely balanced, and this evidence certainly could have swayed the jury into finding Chiquato guilty, because the evidence of intent otherwise was so severely lacking. Moreover, under the second prong of plain error, his rights were violated under the Confrontation Clause, and thus the court can review the issue under the second prong of plain error as well. Are there no other questions? I see none, but you will have rebutted. Thank you. Counsel? Good afternoon. May it please the court and counsel. My name is Perry Miller. I'm here on behalf of the State's Attorney Appellate Prosecutor's Office. The State maintains that there was evidence of intent, and that the testimony that was given by Officer Frazier and Inspector Pickett, it did not constitute hearsay testimony. In their explanation, they were explaining the investigative steps that they had taken in order to lead to the arrest of the defendant. As far as intent, there are plenty of evidence, circumstantial evidence, outside of the alleged hearsay statements that the jury certainly could infer intent on behalf of the defendant. First of all, the defendant passed by. They set up, Inspector Pickett set up a surveillance of the defendant after a plan was developed and Camelia Ingalls had been arrested and gave the name of defendant. Text messages were sent to the defendant, upon which Inspector Pickett developed a plan where the defendant did become the target. When they did a surveillance of the defendant's home, from his home to the place of the car where the defendant entered to get the pseudoephrine out of it, he was caught on camera. On the way, he passed by a Walgreens, which he could have easily stopped there and purchased for only $6.99. That was testified to by Inspector Pickett and also Sergeant Frazier what the going rate of those Walg at cold tablets were for. Then, defendant entered the car. He is seen on camera removing a box of the cold medicine from the car, and he returns to his car. He places it inside the car, but his car is damaged on the outside, so he lets down the back seat and places the tablets, the box that he removed, inside of there. There was no reason for him to place something if he's possessing it for legal reason, and his intent is legal to purchase what he had just removed from there. He also denied in an interview statement, when he was interviewed later by Inspector Pickett, he first stated that he was not in the car. Well, if he was not, the camera, at that time when he stated that, he did not know that he was on camera. If he was in there for a legitimate reason and he had no guilty conscience of engaging in illegal activity, there was no reason for him to state that he was never in the car. Then he proceeded to state that the police officer had planted the box that he had removed from the Ingalls' car on him. That also shows intent. Why would he need to falsify that the police officers had planted this box of Wall Act coal medicine in his car, if he did not have the intent and knowing that he was going to use it for a legal purpose? At no time in his statement did he ever give any reason why he had possessed that, and he did not say that it came from anyone else or that it was for any other purpose. He also paid $50. He did not state in his statement that the $50 was a debt that he owed to someone for some other reason. The jury certainly could infer from all of the strong circumstantial evidence that the defendant had the intent to use this effort for the manufacture of methamphetamine or to produce a substance of that nature. So the state maintains that the evidence and the testimony of Inspector Pickett and Sergeant Fraser did not first constitute her saying. No plain error occurred because the evidence was not closely balanced. It was overwhelming evidence showing that the defendant had engaged in the unlawful possession of methamphetamine. Okay, thank you. Do you have any rebuttal? Okay. The state knew at trial that the evidence of intent was questionable. They should have called Camilla to testify, and they did not. Instead, they tried to circumvent the defendant's rights under the Confrontation Clause by inserting her statement through the testimony of the police officers. Because the evidence of the issue of intent was so close, we cannot be sure that the jury did not rely on this improper evidence in finding Chiquato guilty. And as such, this Court should reverse this conviction and remand for a new trial. Thank you. Okay. Thanks to both of you. The case is submitted. The Court stands in recess.